IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation, | ) ) ) ) | CIVIL NO. 10-00172 SOM/BMK ORDER GRANTING SUMMARY JUDGMENT TO PLAINTIFF |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| DOUG VOGELGESANG, ELLARENE VOGELGESANG, and HARVEST GENERAL INCORPORATED fka DOUG VOGELGESANG, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER GRANTING SUMMARY JUDGMENT TO PLAINTIFF

I.      INTRODUCTION.

        This case, brought under the Declaratory Judgment Act,

28 U.S.C. § 2201, seeks a determination as to whether State Farm

Fire and Casualty Company ("State Farm") has a duty to defend or

indemnify Defendants Doug Vogelgesang, Ellarene Vogelgesang, and

Harvest General Incorporated ("Harvest") under a commercial

general liability ("CGL") policy and an umbrella policy (the

"Policies") from claims brought against the Vogelgesangs and

Harvest in a state court action.  Because there is no possibility

of coverage under the Policies, the court grants summary judgment

in favor of State Farm.

II.     FACTUAL AND PROCEDURAL BACKGROUND.

        A.     The Underlying Lawsuit.

        On June 5, 2008, Takeo and Etsuko Okuda filed suit in

Circuit Court of the First Circuit of the State of Hawaii,

alleging that their contractor (Doug Vogelgesang), Doug

Vogelgesang's wife (Ellarene Vogelgesang), and their company

(Harvest) had defectively constructed and failed to complete the

Okudas' home.  State Farm's Separate Concise Stmt. Undisputed

Facts Supp. Mot. Summ. J. No. 2, ECF No. 16 ("State Farm's

Facts"); Complaint for Specific Performance, Damages and Other

Relief ("State Court Compl."), attached to Errata Regarding Exh.

C of State Farm's Separate Concise Stmt. Facts, ECF No. 28.

According to the State Court Complaint, in June 2006 Defendants

agreed to build the Okudas a home for $580,000 and to complete

the home within one year.  See State Court Compl. ¶¶ 5-6.  The

Okudas allege that, instead, they paid approximately $750,000

over two years, and the home was still not complete as of May

2008.  Id. ¶¶ 6, 7(f),(l).  Additionally, the State Court

Complaint alleges that various aspects of the residence were not

completed properly, that Defendants deceived the Okudas about the

status of Defendants' workers, and that Defendants failed to

provide the Okudas with certain disclosures.  See id. ¶ 7.

        The Okudas allege claims for fraud and

misrepresentation, unfair and deceptive trade practices, breach

of contract, negligence, specific performance, and negligent
misrepresentation.  State Farm's Fact No. 3; <u>see</u> State Court
Compl. ¶¶ 10-30.  The Vogelgesangs and Harvest tendered the
defense of the underlying suit to State Farm.  State Farm's Fact
No. 4; Decl. Jennifer Wilson ("Wilson Decl.") ¶ 7, ECF No. 16.
State Farm is participating in the defense of the underlying
suit, subject to a reservation of rights, and is pursuing the
present action for declaratory relief.  State Farm's Fact No. 5;
Wilson Decl. ¶ 8.

       B.   <u>The Contractors Policy.</u>

     During the periods alleged in the State Court
Complaint, Harvest and its predecessor, Doug Vogelgesang, Inc.,
were insured under a State Farm Contractors Policy (the
"Contractors Policy").  <u>See</u> State Farm's Fact No. 6; Wilson Decl.
¶ 4 & Exh. A (yearly policies).  The Contractors Policy affords
liability insurance via a standard "Contractors Policy--Special
Form 3."  <u>See</u> Wilson Decl. Exh. A 39-72 (Form 3 pp. 1-33).  The
Contractors Policy contains the following language regarding
liability coverage:

> We will pay those sums that the insured
> becomes legally obligated to pay as damages
> because of bodily injury, property damage,
> personal injury or advertising injury to
> which this insurance applies. . . .  This
> insurance applies only:
>
> 1.  to bodily injury or property damage
> caused by an occurrence which takes place in

the coverage territory during the policy
period;

2. to personal injury caused by an occurrence
committed in the coverage territory during
the policy period.  The occurrence must
arise out of the conduct of your business,
excluding advertising, publishing,
broadcasting or telecasting done by or for
you;

3. to advertising injury caused by an
occurrence committed in the coverage
territory during the policy period.  The
occurrence must be committed in the course of
advertising your goods, products or
services.

Contractors Policy Special Form 3 Coverage L at p. 18 (emphasis
omitted).  The Contractors Policy, therefore, only covers injury
and damage caused by an occurrence.  See id.

The Contractors Policy defines "occurrence" as:

a. an accident, including continuous or
repeated exposure to substantially the same
general harmful conditions which result in
bodily injury or property damage; or

b. the commission of an offense, or series of
similar or related offenses, which results in
personal injury or advertising injury.

Id. at 29 (emphasis omitted).  No definition of "accident" is
contained in the Contractors Policy.  The Contractors Policy
defines "bodily injury" as "bodily injury, sickness or disease
sustained by a person, including death resulting from the bodily
injury, sickness or disease at any time."  Id. at 27 (emphasis
omitted).

The Contractors Policy also lists a number of exclusions to the liability coverage.  Specifically, among other things, the Contractors Policy does not apply:

1. to bodily injury or property damage:

   a. expected or intended from the standpoint of the insured; or

   b. to any person or property which is the result of willful and malicious acts of the insured.

. . .

4. to any obligation of the insured under any workers compensation, disability benefits or unemployment compensation law, or any similar law;

. . .

10. to bodily injury, property damage or personal injury due to rendering or failure to render any professional services or treatments.  This includes but is not limited to:

   . . .

   b. engineering, drafting, surveying or architectural services, including preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

   c. Supervisory or inspection services;

   . . .

11. to property damage to:

   . . .

   e. that particular part of real property on which you or any contractor or subcontractor

on your behalf is performing operations, if
the property damage arises out of those
operations; or

f. that particular part of any property that
must be restored, repaired or replaced
because your work was incorrectly performed
on it.

. . .

12. to property damage to your product
arising out of it or any part of it;

13. to property damage to your work arising
out of it or any part of it and included in
the products-completed operations hazard.

. . .

16. to personal injury or advertising injury:

a. arising out of oral or written publication
of material if done by or at the direction of
the insured with knowledge of its falsity;

b. arising out of oral or written publication
of material whose first publication took
place before the beginning of the policy
period;

c. arising out of the willful violation of a
penal statute or ordinance committed by or
with the consent of the insured; or

d. for which the insured has assumed
liability in a contract or agreement.
This part of this exclusion does not
apply to liability for damages that the
insured would have in the absence of a
contract or agreement.

Id. at 19-22 (emphasis omitted).

C.  The Umbrella Policy.

During the time periods alleged in the State Court Complaint, the Vogelgesangs were insured by a standard form State Farm Umbrella Policy (the "Umbrella Policy").  See State Farm's Fact No. 10; Wilson Decl. ¶ 5 & Exh. B (yearly policies).  The Umbrella Policy provides coverage in excess of the Vogelsangs' underlying policies and has a $2,000,000 limit of liability.  See Umbrella Policy Declarations Page.  The Umbrella Policy provides:

> If a claim is made or suit is brought against an insured for damages because of a loss for which the insured is legally liable and to which this policy applies, we will pay on behalf of the insured, the damages that exceed the retained limit.  The most we will pay for such loss is the Coverage L Limit of Liability, as shown on the declarations page . . . .

Umbrella Policy at 6 (emphasis omitted).  The Umbrella Policy defines a "loss" as:

> a. an accident, including accidental exposure to conditions, which first results in bodily injury or property damage during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one loss; or
>
> b. the commission of an offense which first results in personal injury during the policy period.

Id. at 2 (emphasis omitted).

The Umbrella Policy excludes:

> 2. loss arising out of any insured providing or failing to provide a professional service;

7

. . .

4. loss arising out of any insured's act or omission as a member of a corporation's board of directors. . . .

. . .

6. loss arising out of any insured's business property or business pursuits of any insured, unless:

    a. (1) the loss does not involve any land motor vehicle or watercraft; and

    (2) required underlying insurance applies to the loss and provides coverage that pays for the loss . . . .

. . .

14. bodily injury or property damage which is:

    a. either expected or intended by the insured; or

    b. the result of any willful and malicious act of the insured;

. . .

19. liability imposed on or assumed by any insured through any unwritten or written agreement.

Id. at 7, 9 (emphasis omitted).

III.    STANDARD.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party has both the initial burden of

production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. Catrett, 477 U.S. 317, 323 (1986)); accord Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006).  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.  When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  Id. (quoting C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  By contrast, when the nonmoving party bears the burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the non-moving party.  Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Id. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. See Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

Summary judgment may also be appropriate when a mixed question of fact and law involves undisputed underlying facts. See EEOC v. UPS, 424 F.3d 1060, 1068 (9th Cir. 2005); Colacurcio v. City of Kent, 163 F.3d 545, 549 (9th Cir. 1998).

IV.     ANALYSIS.

This is a diversity action. See Compl. ¶ 4, ECF No. 1. Federal courts sitting in diversity apply state substantive law and federal procedural law. See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001). When interpreting a state law, a federal court is bound by the decisions of a state's highest court. Ariz. Elec. Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995). In the absence of such a decision, federal courts attempt to predict how the highest state

court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue.") (quotation and brackets omitted).

The Complaint contains one count, seeking a declaration that State Farm owes no duty to defend and/or indemnify the Vogelgesangs or Harvest under the Contractors Policy or Umbrella Policy for any claims, injuries, or damages alleged or awarded in the underlying lawsuit. Compl. p. 13.

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (1994). Insurance policies must be read as a whole and construed in accordance with the plain meaning of their terms, unless it appears that a different meaning is intended. See id., 883 P.2d at 42; Haw. Rev. Stat. § 431:10-237 ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any

11

ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accordance with the reasonable expectations of a layperson.  <u>Dawes</u>, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy.  <u>See</u> <u>Sentinel Ins. Co. v. First Ins. Co. of Haw.</u>, 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration).  The insurer has the burden of establishing the applicability of an exclusion.  <u>See</u> 76 Haw. at 297, 875 P.2d at 914.

The insurer owes the insured a duty to indemnify "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion."  <u>Dairy Road Partners v. Island Ins. Co.</u>, 92 Haw. 398, 413, 922 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage.  <u>Sentinel</u>, 76 Haw. at 287, 875 P.2d at 904.  However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend.  <u>Pancakes of Haw., Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 291, 944 P.2d 83, 88 (Ct. App. 1997).  In other words, for State Farm to obtain summary judgment on its duty to defend, State Farm must prove that it would be impossible for a claim in the underlying lawsuit

to be covered by the Contractors or Umbrella Policies.  See Tri-S
Corp. v. W. World Ins. Co., 110 Haw. 473, 488, 135 P.3d 82, 97
(2006).

    "Hawaii adheres to the 'complaint allegation rule.'"
Burlington Ins. Co., 383 F.3d at 944.  In that regard:

        The focus is on the alleged claims and facts.
        The duty to defend "is limited to situations
        where the pleadings have alleged claims for
        relief which fall within the terms for
        coverage of the insurance contract.  'Where
        pleadings fail to allege any basis for
        recovery within the coverage clause, the
        insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v.
Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230 (1994) ("Hawaiian
Holiday").

        A.    There is No Covered "Occurrence" or "Loss" Arising
              Out of Alleged Fraud Because Fraud Involves
              Intentional Conduct.

    The Contractors Policy covers "occurrences."
Contractors Policy at 18.  The Umbrella Policy covers "losses."
Umbrella Policy at 6.  Both are defined as "accidents."[1]

_____

    [1]Although both the Contractors Policy and the Umbrella
Policy also define occurrence/loss as "the commission of an
offense which first results in personal injury during the policy
period," no personal injury is alleged by any of the six Counts
of the State Court Complaint.  See Contractors Policy at 30
(defining "personal injury" as arising from: false arrest;
malicious prosecution; wrongful entry into or eviction of a
person from a room, dwelling, or premises that the person
occupies; defamation; and invasion of privacy); Umbrella Policy
at 2-3 (defining "personal injury" as arising from: false arrest;
false imprisonment; wrongful eviction; abuse of process;
malicious prosecution; defamation; or invasion of the right of

Contractors Policy at 29; Umbrella Policy at 2. Count I (Fraud and Misrepresentation) of the State Court Complaint requires that Defendants acted intentionally. "As any injury caused by [an] intentional act would be 'the expected or reasonably foreseeable result of the insured's own intentional acts or omissions,' the intentional nondisclosure alleged in these counts does not constitute an 'accident' and is thus not an 'occurrence' or 'loss' under Hawaii insurance law." State Farm Fire & Cas. Co. v. Scott, Civ. No. 06-00119 SOM/BMK, 2007 U.S. Dist. Lexis 8255, at *18-*19 (D. Haw. Jan. 24, 2007) (quoting Hawaiian Holiday, 76 Haw. at 170, 872 P.2d at 234); see also RLI Ins. Co. v. Thompson, Civ. No. 09-00345 SOM/BMK, 2010 WL 1438925, at *7 (D. Haw. Apr. 12, 2010). Thus, the first count of the State Court Complaint is not covered by either Policy.

A similar analysis renders these claims excluded by the Intentional Act Exclusion of the Policies. See Contractors Policy at 19; Umbrella Policy at 9.

> B. The Remaining Claims Are Not "Occurrences" or "Losses" Because They Arise from Defendants' Alleged Breach of Their Contract with the Okudas.

As the Hawaii Court of Appeals, the Ninth Circuit, and this court have previously held, claims that arise from alleged breaches of contract are not accidents. Because the remaining claims asserted in the underlying litigation arise from

---

private occupancy in one's residence).

Defendants' alleged breach of their construction contract with the Okudas, none of the remaining claims triggers State Farm's duty to defend under the Policies.

In Group Builders, Inc. v. Admiral Ins. Co., 123 Haw. 142, 231 P.3d 67 (Ct. App. 2010), the Hawaii Court of Appeals considered the definition of "accident" set forth in Hawaiian Holiday and Burlington Insurance Co. in determining that defendant Admiral owed no duty to defend or indemnify Group Builders against contract and contract-related tort claims associated with an underlying lawsuit alleging defective construction. Group Builders, a named insured under a commercial general liability insurance policy issued by Admiral, had subcontracted to build a portion of a hotel. 123 Haw. at 143, 231 P.3d at 68. The insurance policy covered claims alleging "bodily injury" or "property damage" if "caused by an 'occurrence.'" 123 Haw. at 145, 231 P.3d at 70. "The policy define[d] 'occurrence' as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" Id.

After construction was completed, the hotel discovered significant mold growth within the new construction and sued various contractors, including Group Builders, for breach of contract, negligence, and negligent misrepresentation, among other claims. 123 Haw. at 144, 231 P.3d at 69. Admiral refused

to defend, indemnify, or otherwise provide coverage to Group
Builders for the claims asserted by the hotel in the lawsuit, and
won partial summary judgment before the state circuit court on
this issue.  Id.

The Hawaii Intermediate Court of Appeals affirmed.
Applying the Hawaii Supreme Court's definition of "accident," as
summarized in Burlington Insurance Co., the ICA concluded that
the hotel's claims were not covered by the policy.  "In Hawaii,"
the court explained, "an occurrence 'cannot be the expected or
reasonably foreseeable result of the insured's own intentional
acts or omissions.'"  123 Haw. at 147, 231 P.3d at 72 (quoting
Burlington Insurance Co., 383 F.3d at 948).  To the extent Group
Builders "breached its contractual duty by constructing a sub-
standard home, then facing a lawsuit for that breach is a
reasonably foreseeable result."  Id. (quoting Burlington
Insurance Co., 383 F.3d at 948).  The court noted that the cases
cited by the plaintiffs as allowing coverage in various other
jurisdictions constituted the minority position on this issue.
123 Haw. at 148, 231 P.3d at 73.  Accordingly, the ICA held that
"breach of contract claims based on allegations of shoddy
performance are not covered under CGL policies."  123 Haw. at
148, 231 P.3d at 73.  Moreover, "tort-based claims, derivative of
these breach of contract claims, are also not covered under CGL
policies."  123 Haw. at 148-49, 231 P.3d at 73-74.  Cf. WDC

16

<u>Venture v. Hartford Accident Indem. Co.</u>, 938 F. Supp. 671, 679 (D. Haw. 1996) (explaining that "[t]here is simply no reason to expect . . . a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury . . . or property damage" to cover "contractual-based allegations").

In the present case, in addition to breach of contract, the State Court Complaint asserts claims for unfair and deceptive trade practices, negligence, specific performance, and negligent misrepresentation. State Court Compl. ¶¶ 15-30. Each of these claims asserts actions that arise directly out of the Okudas' contract with Defendant.

The claim of unfair and deceptive trade practices (Count Two) is premised on "Vogelgesang's misrepresentations and their failures to disclose lien rights and remedy rights as required by state law." State Court Compl. ¶ 16. To the extent this Count alleges deliberate misrepresentations and omissions, the claim does not involve an occurrence or loss and would also be excluded by the Policies' exclusions for intentional conduct. To the extent the claim alleges negligent misrepresentations and omissions, it falls under the analysis for negligent misrepresentation, and is excluded from coverage for the reasons set forth below.

The breach of contract claim (Count Three), and its companion claim for specific performance of the parties' agreement (Count Five), State Court Compl. ¶¶ 18-19, 24-27, are clearly excluded from coverage under Hawaii law.  See Group Builders, Inc., 123 Haw. at 148, 231 P.3d at 73; see also 3139 Props., LLC v. First Specialty Ins. Corp., Civ. No. 06-00619 SOM/LEK, 2007 WL 1701922, at *6 (D. Haw. June 8, 2007) (underlying complaint's claim for specific performance, which merely sought to compel the defendant to comply with its agreement, did not allege an "occurrence").

The claim of negligence (Count Four) similarly alleges that Vogelgesang breached his duties to the Okudas "by failing to finish the residence in a timely manner, and by failing to achieve high-grade quality for the residence."  State Court Compl. ¶ 22.  In Burlington, the underlying complaint alleged a breach of contract based, in part, on alleged failure to construct a residence.  Because the allegations of breaches of duty merely described how the contract to build a residence was breached, the Ninth Circuit determined that it could not "fairly construe this language to state a separate independent cause of action for negligence."  383 F.3d at 948.  Similarly, here, the claim that Defendants failed to finish the residence in a timely and workmanlike manner is not truly an independent cause of

action, but instead a restatement of the breach of contract claim.

Defendants argue that, even if the majority of the claims in the State Court Complaint are contractual, State Farm's duty to defend is nevertheless triggered because it is possible that Count Six, for negligent misrepresentation, is based on statements that did not arise out of the contract and may therefore be considered "accidental" under the Policies. Opp. 11-14. Defendants base their argument on paragraph 7m of the State Court Complaint, which alleges in general fashion that "[a]dditional misrepresentations and reckless statements were made by Vogelgesang to Okuda." Defendants point out that the "additional misrepresentations" are alleged as separate and apart from the series of alleged misrepresentations that pertain to the contract, suggesting that the additional misrepresentations referred to do not arise from the contract. Opp. 13. Defendants also note that the negligent misrepresentation cause of action is not based on specific representations made in connection with the contract, but instead alleges generally that "Vogelgesang negligently and carelessly made misrepresentations to Okuda, upon which Okuda relied and upon which Okuda had a right to rely." State Court Compl. ¶ 29; see Opp. 13.

This argument is unpersuasive. Hawaii follows the Restatement definition of negligent misrepresentation. <u>State v.</u>

U.S. Steel Corp., 82 Haw. 32, 41, 919 P.2d 294, 303 (1996).

Under the Restatement, negligent misrepresentation may be asserted only in the context of a business relationship.  The Restatement defines the tort as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts  § 552 (1977).  See also U.S. Steel Corp., 82 Haw. at 41, 919 P.2d at 303 (explaining that "[t]he duty imposed by section 552 [of the Restatement (Second) of Torts] is . . . to exercise reasonable care or competence in obtaining or communicating information for the guidance of others in their business transactions"); Chun v. Park, 51 Haw. 462, 468 & n.5, 462 P.2d 905, 909 & n.5 (1969) (ruling that damages for negligent misrepresentation are limited by the scope of the business relationship between the party who supplied the information and the party who relied on the information).

As discussed above, Defendants' business relationship with the Okudas is founded on their agreement that Defendants would construct their house.  The only negligent misrepresentations for which Defendants could be liable to the

Okudas are those made in the course of that business relationship. The allegation of "additional misrepresentations and reckless statements" cannot be construed to allege representations that may be considered "accidental" under Hawaii law. Accord Burlington Ins. Co. v. United Coatings Mfg. Co., 518 F. Supp. 2d 1241 (D. Haw. 2007) (holding that unfair or deceptive acts or practices, specific performance, negligent misrepresentation, and negligence claims all stemmed from the defendant's contracts and warranties, rather than "any independent duty originating in tort," and were therefore excluded from the CGL policy's coverage); CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975, 987 (D. Haw. 1999) (holding that a negligent misrepresentation claim did not involve an "occurrence" under a CGL policy because "any claim of such 'negligence' stemmed from intentional acts or contract-based claims").

Nor does the Okudas' prayer for general damages prove that they are seeking recovery for bodily injury stemming from the alleged negligent misrepresentations. Cf. Opp 14-15 (arguing that, because general damages are not contract damages and may include recovery for bodily injury, the Complaint alleges bodily injury). As State Farm points out, Hawaii courts permit recovery of solely the pecuniary losses that resulted from a negligent misrepresentation. See, e.g., Chun, 51 Haw. at 468, 462 P.2d at 909. Therefore, even if general damages may include bodily

21

injury in certain cases, there can be no such recovery if the

Okudas are successful in their negligent misrepresentation cause

of action in this case.

C.    House Bill No. 924.

At the hearing on this matter, State Farm brought to

the court's attention a recently enacted law affecting insurance

coverage under commercial general liability policies for

construction defects.  See House Bill No. 924, Haw. Legis. Serv.

93 (West) (enacted June 3, 2011), to be codified at Haw. Rev.

Stat. § 431:1.  Citing "uncertainty" created by the Group

Builders decision, the law modifies chapter 431 of Hawaii Revised

Statutes by providing that, for liability insurance policies

"that cover[] occurrences of damage or injury during the policy

period and that insure[] a construction professional for

liability arising from construction-related work, the meaning of

the term 'occurrence' shall be construed in accordance with the

law as it existed at the time that the insurance policy was

issued."  See id.

State Farm stated that it did not believe this law

affected its motion for summary judgment and, in a supplemental

brief filed after the hearing, Defendants agreed.  See Defs.'

Submission re: Act 924, ECF No. 31.  The court has reviewed the

new law and agrees with the parties that the law does not affect

the outcome of this case.  As explained above, although the Group

22

Builders case was issued by the ICA in 2010, it relied heavily on previously decided state and federal cases. See Group Builders, 123 Haw. at 146-48, 231 P.3d at 71-73 (examining the holdings of Burlington Ins. Co. v. Oceanic Design & Constr. Inc., 383 F.3d 940 (9th Cir. 2004), Burlington Ins. Co. v. United Coatings Mfg. Co., 518 F. Supp. 2d 1241 (D. Haw. 2007), WDC Venture v. Hartford Accident & Indem. Co., 938 F. Supp. 671 (D. Haw. 1996), and Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230 (1994), among other cases). Nearly all of those cases predate 2006, the year State Farm issued to Defendants the first policy that could potentially provide coverage in this case. None of these cases suggests that the claims associated with the Okudas' contract with Defendants warrants coverage. See United Coatings, 518 F. Supp. 2d at 1249 (reading WDC Venture, its progeny, and Burlington Ins. Co. v. Oceanic for the proposition that, "under Hawaii law, contract and contract-based tort claims are not within the scope of CGL policies") (internal quotation marks omitted). Accordingly, the court concludes that House Bill No. 924 does not affect the court's ruling on State Farm's motion.

D.    There is No Genuine Issue of Material Fact With
Respect to State Farm's Reservation of Rights.

Finally, contrary to Defendants' argument, summary

judgment is not precluded by any question of fact with respect to

State Farm's reservation of rights.  Whether State Farm is

estopped from attempting to decline coverage is an affirmative

defense that Defendants, not State Farm, bear the burden of

proving.  See Cal. Dairies Inc. v. RSUI Indem. Co., 617 F. Supp.

2d 1023, 1048 n.11 (E.D. Cal. 2009) ("To demonstrate waiver, the

insured bears the burden of proof to demonstrate that the carrier

intentionally relinquished a right or that the carrier's acts are

so inconsistent with an intent to enforce the right as to induce

a reasonable belief that such right has been relinquished.");

Waller v. Truck Ins. Exchange, Inc., 900 P.2d 619, 635-36 (Cal.

1995) (same).

Defendants proffer no evidence suggesting that State

Farm has improperly reserved its rights.  Cf. Miller, 454 F.3d at

987 (if the moving party does not bear the burden of proof at

trial with respect to an issue, nonmoving party must present

evidence establishing a genuine issue of material fact to avoid

summary judgment on the issue).  Indeed, Defendants do not

actually contend that the reservation of rights was inadequate.

Instead, they merely speculate that, because the letter was not

provided with State Farm's motion for summary judgment, this may

indicate that the reservation of rights was insufficiently

asserted by State Farm.[2]  Defendants' speculation, standing

alone, is not enough to create a genuine issue of material fact

regarding whether State Farm waived its right to contest

coverage.

      E.   <u>State Farm's Duty to Indemnify.</u>

      The duty to indemnify is narrower than the duty to

defend.  Because the court finds that State Farm does not have a

duty to defend Defendants in the underlying suit, State Farm also

has no duty to indemnify Defendants with respect to the potential

liability they face in that suit.  <u>See</u> <u>CIM Ins. Corp. v. Midpac</u>

<u>Auto Ctr., Inc.</u>, 108 F. Supp. 2d 1092, 1097, 1107 (D. Haw. 2000)

(because CGL policy did not cover contract and contract-based

tort claims, insurer had neither the duty to defend nor to

indemnify insured); <u>Group Builders, Inc.</u>, 123 Haw. at 148-49, 231

P.2d at 73-74 (affirming partial summary judgment providing that

CGL insurer had no duty to indemnify breach of contract and

derivative claims "based on allegations of shoddy performance");

<u>see generally</u> <u>Hawaiian Holiday</u>, 76 Haw. at 169, 872 P.2d at

233(duty to defend is "much broader" than duty to pay claims).[3]

---

   [2]The court notes that State Farm, by contrast, offered the
declaration of a claims representative that State Farm is
defending the underlying case pursuant to a reservation of
rights.  <u>See</u> State Farm's Fact No. 5; <u>see also</u> Wilson Decl. ¶ 8.
State Farm also submitted its original reservation of rights
letter with its reply memorandum.

   [3]In light of the court's ruling that the State Court
Complaint does not allege covered occurrences, the court need not

V.      CONCLUSION.

For the reasons set forth above, the court GRANTS State Farm's motion for summary judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 6, 2011.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

State Farm Fire & Casualty Co. v. Vogelgesang; Civil No. 10-00172 SOM/BMK; ORDER
GRANTING SUMMARY JUDGMENT TO PLAINTIFF

---

consider State Farm's alternative arguments that it owes no duty
to Defendant Harvest because Harvest is not insured by the
Umbrella Policy, and that various other exclusions apply.  See
Mot. 16-17, 25-28.

26